UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-23001-CIV-MOORE/SIMONTON

MICCOSUKEE TRIBE OF
INDIANS OF FLORIDA, a federally-
recognized Indian Tribe,

    Plaintiff,

vs.

UNITED STATES OF AMERICA, et al.,

    Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

THIS CAUSE came before the Court upon Defendants' Motion to Dismiss (dkt # 28).

UPON CONSIDERATION of the Motion, the Responses, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

**I.    BACKGROUND**

This case involves a federally-recognized Indian Tribe claiming that certain water management actions by Defendants have caused high water levels on lands to which the Indian Tribe has rights, in violation of the Tribe's constitutional and statutory rights. Plaintiff Miccosukee Tribe of Indians of Florida (the "Miccosukee Tribe") is a federally recognized Indian Tribe residing on land in and near Everglades National Park. All "aboriginal" rights that the Miccosukee Tribe had to the lands were extinguished in 1982 as part of a court settlement between the United States and the Seminole Nation of Indians.[1] The Miccosukee Tribe now holds a perpetual leasehold (the "Lease")

---

[1] The Miccosukee Tribe is a successor in interest to the Seminole Nation.

to a 189,000-acre tract of land (the "Leased Area") to the north of Everglades National Park. The Lease was granted to the Miccosukee Tribe in 1982 by the Board of Trustees of the State of Florida Internal Improvement Trust Fund.

The Leased Area is located within Water Conservation Area 3A ("WCA 3A"). WCA 3A is part of the Central and Southern Florida Project for Flood Control and Other Purposes (the "C & SF Project"). The C & SF Project was authorized by Congress in 1948 to control water flows and levels in South Florida and the Everglades, in order to provide both flood protection and water supply for the developed areas of South Florida. The C & SF Project is operated by The Army Corps of Engineers (the "Corps") and its local sponsor, The South Florida Water Management District ("SFWMD"). The C & SF Project directs water flow southward from Lake Okeechobee to the Everglades. Some of this water passes through WCA 3A and the Leased Area. Water is released out of the Leased Area through four water management structures; S-12(A), S-12(B), S-12(C) and S-12(D). The released water goes into the L-28 canal and moves southward through numerous culverts under the Tamiami Trail and flows into Everglades National Park.

On October 28, 2008, the Miccosukee Tribe filed the instant Complaint (dkt # 1), alleging that Defendants' water management actions have infringed on their constitutional and statutory rights by permitting high water levels to exist in the Leased Area. The Miccosukke Tribe's claims include violations of the Florida Indian Land Claims Settlement Act (Count I); Due Process (Count II); Equal Protection (Count IV); and an Action in the Nature of Mandamus (Count III).

## II.    STANDARD OF REVIEW

A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. Milburn v. United States, 734 F.2d 762, 765 (11th Cir.

1984). On a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. SEC v. ESM Group, Inc., 835 F.2d 270, 272 (11th Cir. 1988). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 355 U.S. 544, 545 (2007). A complaint must contain enough facts to indicate the presence of the required elements. Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1302 (11th Cir. 2007). "[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002). However, as long as the allegations rise above a speculative level, a well-pleaded complaint will survive a motion to dismiss "'even if it appears that a recovery is very remote and unlikely.'" Conley v. Gibson, 355 U.S. 41, 45-46 (1957), *overruled on other grounds by* Twombly, 550 U.S. at 545-46 (citation omitted).

## III.   ANALYSIS

### A.   The Florida Indian Claims Settlement Act

The Miccosukee Tribe claims that Defendants violated the Florida Indian Claims Settlement Act by violating the terms of the Lease. See 25 U.S.C. §§ 1741 et seq. (ratifying the Lease). The stated purpose of the Lease is: "(1) to preserve the Leased Area in its natural state for the use and enjoyment of the Miccosukee Tribe and the general public . . . (2) to preserve fresh water aquatic life, wildlife, and their habitat; and (3) to assure proper management of water resources." Lease, ¶ 3(e) (dkt # 1, at 35). With respect to water management activity, the Lease provides, in relevant part:

> 6. Rights of South Florida Water Management District
> The Leased Area has for many years comprised a portion of a large reservoir utilized for the flowage and storage of water servicing the area of Broward, Dade, Monroe and Collier Counties and designated as Water Conservation Area 3 as part of the federally authorized project of flood control and water

> management for central and southern Florida. The Commission and the Miccosukee Tribe agree that all of the rights set forth in paragraphs 1 through 5 and 7 <u>are subject to and shall not interfere with the rights, duties and obligations</u> of the SFWMD or the United States Army Corps of Engineers, pursuant to the requirements of the aforesaid federally authorized project, conveyances, easements, grants, rules, statutes, or any other present or future lawful authority <u>to manage, regulate, raise, or lower the water levels</u> within the Leased Area or Water Conservation Area 3 . . . .

<u>Id.</u> ¶ 6 (emphasis added). The Florida Indian Claims Settlement Act also provides:

> Any transfer of lands under this section shall be subject to all existing leases, easements, and rights-of-way, and all the rights, easements, and reservations in favor of the Central and Southern Florida Flood Control District (now the South Florida Water Management District) and shall not increase, diminish, modify, or otherwise affect the extent to which chapter 373, Florida Statutes [Water Resources], and its successor laws, have force and effect within such lands.

25 U.S.C. § 1747(c)(1). The plain language of these provisions makes clear that the rights of the Miccosukee Tribe under the Lease are subject to the Corps and SFWMD's right and duty to regulate the water levels within the Leased Area and WCA 3A. In other words, the Miccosukee Tribe's rights under paragraphs 1 through 5 and 7 of the Lease, particularly the right provided in paragraph 3(e) stating that the purpose of the Lease is to preserve Leased Area in its natural state, are subservient to, and cannot interfere with, the rights and duties of the Corps and SFWMD to raise or lower the water levels in the Leased Area and WCA 3A.

Without respect to whether collateral estoppel applies here, the precedents of this Court concerning the Miccosukee Tribe's ability to bring claims arising under The Florida Indian Claims Settlement Act challenging the water levels in the Leased Area or WCA 3A so clearly bar Plaintiff's claim that this Court finds that this claim is frivolous. In <u>Miccosukee Tribe of Indians of Florida v. United States</u> (Case No. 95-0532-CIV) this Court held:

4

> [T]he Lease and Settlement Agreement subject the Tribe's rights in the Leased Area to the Corps' authority to raise and lower water levels within WCA 3A. Thus, the only duty that the Corps assumed towards the Tribe was to manage the area pursuant to its authority under the C & SF Project and accompanying operating criteria.

980 F. Supp. 448, 461-62 (S.D. Fla. 1997) (Davis, J.) (internal citations omitted). Likewise, in Miccosukee Tribe of Indians of Florida v. United States (Case No. 05-23045-CIV), this Court held:

> This Court has repeatedly and unequivocally held that "despite the general trust obligation of the United States to Native Americans, the government assumes no specific duties to Indian tribes beyond those found in applicable statutes, regulations, treaties, or other agreements." Furthermore, the 1982 Act merely authorizes the Secretary of the Interior to accept title to lands located in WCA 3A "to be held in trust" for the benefit of the Tribe. Not only does it fail to establish an enforceable trust obligation, but it affirmatively denies the Tribe the right to "interfere" with the actions of the Corps with respect to the water levels in WCA 3A.

430 F. Supp. 2d 1328, 1336 (S.D. Fla. 2006) (Moore, J.) (internal citations omitted) (rejecting claim that Defendants violated the Indian Trust Doctrine, as reflected in the Indian Land Claims Settlement Act of 1982).

Although the underlying facts concerning the causes of the high water levels may have been different in the above-referenced cases, the principle that the Miccosukee Tribe cannot challenge the water levels in the Leased Area or WCA 3A based on the provisions of the Lease or the Florida Indian Claims Settlement Act is clear and remains unchanged. Moreover, while the provision of the Lease that prevents the Miccosukee Tribe from interfering with the actions of the Corps and SFWMD with respect to water levels may impact the Miccosukee Tribe's ability to use and enjoy the land, the Miccosukee Tribe agreed to this term, which is clear and unambiguous, upon entering the Lease. See Lease ¶6. Accordingly, Plaintiff's Florida Indian Claims Settlement Act claim must be dismissed.

B.  Due Process

The Miccosukee Tribe claims that Defendants' water management actions have deprived it of "life, liberty and property without due process of law through actions that have stopped the flow of water through the Everglades and backed up excessive amounts of water on Tribal lands." Compl. ¶ 82. Without respect to whether collateral estoppel applies here, the precedents of this Court concerning the Miccosukee Tribe's ability to bring due process claims challenging the water levels in the Leased Area or WCA 3A so clearly bar Plaintiff's due process claim that this Court finds that this claim is frivolous.

This Court has twice held that the Miccosukee Tribe lacks a property interest sufficient to support a due process claim based on water levels in the Leased Area or WCA 3A. In <u>Miccosukee Tribe of Indians of Florida v. United States</u> (Case No. 95-0532-CIV) this Court held that the Miccosukee Tribe lacked a constitutionally protected property interest sufficient to bring a due process claim based on the Defendants' failure to provide flood relief by opening water management structures and cutting vegetation downstream to reduce water levels. 980 F. Supp. at 463-64 (Davis, J.). In <u>Miccosukee Tribe of Indians of Florida v. United States</u> (Case No. 02-22778-CIV) this Court recognized that the Lease specifically reserved to the Corps and SFWMD the right to control water levels in the Leased Area and WCA 3A and therefore the Miccosukee Tribe lacked a constitutionally protected property interest that would enable them to prevail on a due process claim based on water levels. Report and Recommendation, at 8-9 (O'Sullivan, Magistrate J.) (dkt # 135), adopted (Moore, J.) (dkt # 142).

Although the causes of the high water levels complained of in the above-referenced cases varied, in each of these cases the absence of a cognizable property interest that would permit the

Miccosukee Tribe to prevail on a due process claim based on water levels in the Leased Area or WCA 3A was identical. Accordingly, Plaintiff's due process claim must be dismissed.

     C.     Equal Protection

The Miccosukee Tribe claims that Defendants violated its right to equal protection because it is a discrete and insular minority that has been adversely impacted by Defendants' conduct. Specifically, the Miccosukee Tribe claims that Defendants' water management actions "protect non-Indian people from excess flood water while the lands of the Miccosukee Tribe of Indians and the Miccosukee people . . . were not provided any relief." Compl. ¶ 61. On their face, the Florida Indian Claims Settlement Act, the Lease and the water management procedures are racially and ethnically neutral because they do not require the government to discriminate against any individual or group. Miccosukee Tribe of Indians of Florida v. United States, 980 F. Supp. 448, 465 (S.D. Fla. 1997) (Davis, J.). "The fact that a facially neutral law has a discriminatory impact does not alone trigger equal protection analysis." Id. (citing Washington v. Davis, 426 U.S. 229, 242 (1976); Personnel Adm'r of Mass. v. Feeney, 442 U.S. 256, 272 (1979)).

"[A] neutral law or policy is only unconstitutional if it can be shown to have a discriminatory purpose." Id. (citing Feeney, 442 U.S. at 272). Discriminatory purpose implies that the decision maker "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." Id. "The court may infer discriminatory purpose from the totality of the circumstances, including *systematic* unequal application of a facially neutral law." Miccosukee, 980 F. Supp. at 466, (citing Davis, 426 U.S. at 241-42) (emphasis in original). Here, the Miccosukee Tribe alleges that Defendants' water management actions have been taken, at least in part, because of, and not merely in spite of, their

7

adverse effects on the Miccosukee Tribe. Thus, Plaintiff has sufficiently pleaded an equal protection claim.[2]

    D.    Mandamus

The Miccosukee Tribe also seeks to invoke this Court's mandamus jurisdiction to compel Defendants to reduce the water levels in the Leased Area. "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "Mandamus, which is an extreme form of equitable relief, 'is . . . designed to require an official to perform and act required by law.'" Myers v. Stuebe, No. 8:09-cv-380-T-17MAP (EAK), 2009 WL 591491, *2 (M.D. Fla. Mar. 6, 2009).[3] "'Mandamus relief is only appropriate when: (1) the plaintiff has a clear right to the relief requested; (2) the defendant has a clear duty to act; and (3) no other adequate remedy [is] available.'" Dennis v. U.S. Bureau of Prisons, 325 Fed. Appx. 744, 746 (11th Cir. 2009) (quoting Cash v. Barnhart, 327 F.3d 1252, 1258 (11th Cir. 2003)). "Put another way, a writ of mandamus 'is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty.'" Id. (quoting Heckler v. Ringer, 466 U.S. 602, 616 (1984)). Thus, for mandamus purposes, a clear duty

---

[2] In Plaintiff's Response to Defendants' Motion to Dismiss (dkt # 33), Plaintiff made due process arguments under section G, titled "The Tribe has Properly Stated a Claim for Violations of the Equal Protection Clause, instead of putting forth equal protection arguments. This Court disregarded Section G of Plaintiff's Response to Defendants' Motion to Dismiss.

[3] The writ of mandamus was abolished in the district courts by Federal Rule of Civil Procedure 81(b). However, federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. Courts often construe petitions for a writ of mandamus as a request for an injunction compelling an officer or employee of the United States or agency to perform a duty. See Myers, 2009 WL 591491, *2.

to act is one that is "clear, ministerial and non-discretionary." Kirkland Masonry, Inc. v. C.I.R., 614 F.2d 532, 534 (5th Cir. 1980).

The Miccosukee Tribe has failed to adequately plead entitlement to relief in the nature of mandamus. The Miccosukee Tribe seeks an injunction compelling the Corps and the SFWMD to reduce the water levels in the Leased Area. However, the Corps and SFWMD's management of water levels through the C & SF project is precisely the kind of discretionary action that is outside of this Court's mandamus jurisdiction. Section 1361's jurisdictional grant does not include the power to direct an officer or employee of the United States or agency to execute its discretionary duties in a particular fashion or to compel the same to exercise its discretion to reach a certain outcome. Thus, the Miccosukee Tribe's request for relief in not within this Court's mandamus jurisdiction and must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Defendants' Motion to Dismiss (dkt # 28) is GRANTED IN PART and DENIED IN PART, consistent with the terms of this Order. Defendants may file a motion for attorneys' fees and costs on Counts I and II, pursuant to Rule 11(b), by September 30, 2009.

DONE AND ORDERED in Chambers at Miami, Florida, this 16th day of September, 2009.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:   All counsel of record