IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 08-23001-CIV-MOORE/SIMONTON

MICCOSUKEE TRIBE OF
INDIANS OF FLORIDA, a federally-
recognized Indian Tribe,

    Plaintiff,

vs.

UNITED STATES OF AMERICA, et al.,

    Defendants.
_____/

## ORDER DENYING MOTION FOR RECONSIDERATION

THIS CAUSE came before the Court upon Defendants' Motions for Reconsideration (dkt # 51) and Judgment on the Pleadings (dkt # 72).

UPON CONSIDERATION of the Motion, the Responses, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

I.     BACKGROUND

This case involves a federally-recognized Indian tribe claiming that certain water management actions by Defendants have caused high water levels on lands to which the Indian Tribe has rights, in violation of the Tribe's constitutional and statutory rights. Plaintiff Miccosukee Tribe of Indians of Florida (the "Miccosukee Tribe") is a federally recognized Indian Tribe residing on land in and near Everglades National Park. All "aboriginal" rights that the Miccosukee Tribe had to the lands were extinguished in 1982 as part of a court settlement between the United States and the Seminole Nation of Indians.[1] The Miccosukee Tribe now holds a perpetual leasehold (the "Lease")

---

[1] The Miccosukee Tribe is a successor in interest to the Seminole Nation.

to a 189,000-acre tract of land (the "Leased Area") to the north of Everglades National Park. The Lease was granted to the Miccosukee Tribe in 1982 by the Board of Trustees of the State of Florida Internal Improvement Trust Fund.

The Leased Area is located within Water Conservation Area 3A ("WCA 3A"). WCA 3A is part of the Central and Southern Florida Project for Flood Control and Other Purposes (the "C & SF Project"). The C & SF Project was authorized by Congress in 1948 to control water flows and levels in South Florida and the Everglades, in order to provide both flood protection and water supply for the developed areas of South Florida. The C & SF Project is operated by The Army Corps of Engineers (the "Corps") and its local sponsor, The South Florida Water Management District ("SFWMD"). The C & SF Project directs water flow southward from Lake Okeechobee to the Everglades. Some of this water passes through WCA 3A and the Leased Area. Water is released out of the Leased Area through four water management structures; S-12(A), S-12(B), S-12(C) and S-12(D). The released water goes into the L-28 canal and moves southward through numerous culverts under the Tamiami Trail and flows into Everglades National Park.

On October 28, 2008, the Miccosukee Tribe filed the instant Complaint (dkt # 1), alleging that Defendants' water management actions have infringed on their constitutional and statutory rights by permitting high water levels to exist in the Leased Area. The Miccosukke Tribe's claims include violations of the Florida Indian Land Claims Settlement Act (Count I); Due Process (Count II); Equal Protection (Count IV); and an Action in the Nature of Mandamus (Count III). In an Order dated September 16, 2009, Granting in Part and Denying in Part Defendants' Motion to Dismiss (dkt # 37), this Court dismissed Counts I, II and III, leaving only the equal protection claim.

## II. STANDARD OF REVIEW

The applicable standard for a motion for reconsideration is that the moving party "must demonstrate why the court should reconsider its prior decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. A motion for reconsideration should raise new issues, not merely address issues litigated previously." Socialist Workers Party v. Leahy, 957 F. Supp. 1262, 1263 (S.D. Fla. 1997) (internal quotation and citations omitted). "Courts have distilled three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice." Cover v. Wal-Mart Stores, Inc., 148 F.R.D. 294, 295 (M.D. Fla. 1993) (citations omitted).

## III. ANALYSIS

Defendants argue that Plaintiff's equal protection claim should be dismissed because: 1) it is barred by collateral estoppel; 2) the Miccosukee Tribe lacks standing; and 3) the Administrative Procedure Act's ("APA") sovereign immunity waiver does not waive sovereign immunity for Plaintiff's equal protection claim.

### A. Collateral Estoppel

Defendants claim that Plaintiff's equal protection is barred by collateral estoppel because the Miccosukee Tribe raised an equal protection claim in a previous case. Collateral estoppel bars "relitigation of particular issues which were actually litigated and decided in a prior suit." Citibank, N.A. v. Data Lease Fin. Corp., 904 F.2d 1498, 1501 (11th Cir. 1990). Collateral estoppel applies where "(1) the issue was identical in both the prior and current action; (2) the issue was actually litigated in the prior action; (3) the determination of the issue was critical and necessary to the judgment in the prior action; and (4) the party against whom the earlier decision is asserted had a full

and fair opportunity to litigate the issue in the earlier proceeding." Dennis v. U.S. Bureau of Prisons, 325 Fed. Appx. 744, 747 (11th Cir. 2009).

"[A] neutral law or policy is only unconstitutional if it can be shown to have a discriminatory purpose." Miccosukee Tribe of Indians of Fla. v. United States, 980 F. Supp. 448, 465 (S.D. Fla. 1997) (citing Personnel Adm'r of Mass. v. Feeney, 442 U.S. 256, 272 (1979)). "The fact that a facially neutral law has a discriminatory impact does not alone trigger equal protection analysis." Id. (citing Washington v. Davis, 426 U.S. 229, 242 (1976); Feeney, 442 U.S. at 272). Discriminatory purpose implies that the decision maker "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." Id.

Collateral estoppel does not bar Plaintiff's equal protection claim because the issues in the current and prior action are not identical. In the prior action, the Miccosukee Tribe alleged that Defendants' failure to alleviate flooding caused by Tropical Storm Gordon in November of 1994 was an equal protection violation because the decisions not to cut the S-12 vegetation and open the S-333 gates had a discriminatory purpose. See Miccosukee, 980 F. Supp. at 465. On summary judgment, the Court concluded that the evidence did not raise a genuine factual issue of discriminatory purpose because the Miccosukee Tribe had not produced evidence that Defendants made their decisions with discriminatory intent. Id. at 466. That conclusion does not, however, mean that the Miccosukee Tribe is forever barred from bringing an equal protection claim for decisions made by Defendants that increase water levels in the Leased Area. This is particularly true given that the challenged actions have been taken pursuant to the Interim Operating Plan, which went into effect well after the Court's previous denial of the Miccosukee Tribe's equal protection claim.

Unlike the Miccosukee Tribe's Florida Indian Claims Settlement Act claim, which is entirely

4

contingent on statutory rights and the Tribe's rights under the Lease, both of which are unchanging, the Tribe's equal protection claim is based on the allegedly discriminatory intent underlying certain water management decisions. The purpose and intent governing a course of action may change over time, depending on changes in the policies of the organization taking the action, changes of decision making individuals within the organization, or changes in the circumstances driving the action, among other things. Even after a court finds that a policy or action lacks discriminatory purpose, over time the likelihood of prevailing on a future equal protection claim may gradually increase as changes occur that could materially affect the basis of the Court's prior decision. There can be no fixed amount of time after which an equal protection claim again becomes viable after failing. Changes that could affect the basis of a prior ruling may occur slowly, rapidly, or not at all, within different organizations over time. Nevertheless, at the motion to dismiss stage, an interval of a decade is a sufficient period of time to support an allegation that conduct, which at one time could not be shown to violate Plaintiff's equal protection rights may now, under a different set of circumstances, violate such rights. Therefore, this claim is not barred by collateral estoppel.

B.  Standing

Defendants claim that the Miccosukee Tribe lacks standing to raise an equal protection claim.[2] "In evaluating whether a party has standing, 'we must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" Midrash

---

[2] A sovereign or organization may bring an equal protection claim on behalf of its members as long as it meets the applicable standing requirements. League of United Latin. Am. Citizens v. Bredeson, 500 F.3d 523, 527-28, 530 (6th Cir. 2007) (affirming district court's finding that plaintiff had organizational standing to bring equal protection claim); Nat'l Parks Conservation Ass'n v. Norton, 324 F.3d 1229, 1245 (11th Cir. 2003) (finding that organization had standing to bring equal protection claim on behalf of its members).

Sephardi, Inc., v. Town of Surfside, 366 F.3d 1214, 1223 (11th Cir. 2004). The common law has long recognized the doctrine of parens patrie, the prerogative of a sovereign to bring suit "for the prevention of injury to those who cannot protect themselves." Alfred L. Snapp & Son, Inc. v. Puerto Rico, 458 U.S. 592, 600 (1982). Although little is left of the vestiges of the original common law doctrine, parens patrie standing still permits a sovereign to protect the rights of its citizens by seeking to vindicate a quasi-sovereign interest.[3] Id. A quasi-sovereign interest exists when the interest (1) involves "the health and well-being -- both physical and economic -- of its residents in general," or involves a sovereign's "interest in not being discriminatorily denied its rightful status within the federal system," and (2) "articulate[s] an interest apart from the interests of particular private parties" that affects "a sufficiently substantial segment of its population."[4] Id. at 607. See Table Bluff Reservation (Wiyot Tribe) v. Philip Morris, Inc., 256 F.3d 879, 885 (9th Cir. 2001) (setting forth a similar articulation of a quasi-sovereign interest). Thus, the first requirement of a quasi-sovereign interest concerns the nature of the interest, and the second concerns its scope.[5]

1.  Physical and Economic Health and Well-Being

The Miccosukee Tribe alleges that it uses its land in the Leased Area for cultural, religious,

---

[3] The Miccosukee Tribe is a "sovereign yet subordinate dependent nation [ . . . and] must comply with the same rules that bind all other political subdivisions of the United States." Fla. Paraplegic, Ass'n, Inc. v. Miccosukee Tribe of Indians of Fla., 166 F.3d 1126, 1135 (S.D. Fla. 1999) (stating that the sovereignty of Indian tribes has deep historical roots).

[4] A quasi-sovereign interest "is a judicial construct that does not lend itself to a simple or exact definition," but is less than a sovereign interest. Snapp, 458 U.S. at 601. Two easily identifiable sovereign interests include "the exercise of sovereign power over individuals and entities within the relevant jurisdiction - this involves the power to create and enforce a legal code, both civil and criminal; second, the demand for recognition from other sovereigns - most frequently this involves the maintenance and recognition of borders." Id.

[5] A party asserting parens patrie standing need not meet the organizational standing requirements. Conn. v. Am. Elec. Power Co., Inc., 582 F.3d 309, 339 (2d Cir. 2009).

recreational, commercial, and subsistence activities, including hunting, fishing, frogging, commercial air-boating, and agriculture. Agriculture activities include traditional subsistence agriculture and cultivating corn on tree islands for religious purposes. The Miccosukee Tribe also uses the Leased Area for tribal government and religious purposes and utilizes its natural resources, including its flora and fauna, for tribal purposes and for fabrication into artifacts or handicrafts. Defendants' water management actions are allegedly diminishing the Miccosukee Tribe's ability to engage in these traditional activities on which their way of life largely depends. Taking these allegations as true, there can be little doubt that the Miccosukee Tribe's interest in preserving basic elements of its culture and way of life affects the general physical and economic health and well-being of Tribe members.

    2.    Interest Apart From Interests of Private Parties that Affects a Sufficiently Substantial Segment of the Population

An essential characteristic of a quasi-sovereign interest is that it is more than a sovereign's proprietary interest or the interest of a private party that the sovereign wishes to pursue. A sovereign may have proprietary interests, such as business ownership or land interests, that sometimes requires the sovereign to pursue those interests in court. Snapp, 458 U.S. at 601-02. A sovereign may also pursue the interests of private parties for a variety of reasons. Id. at 602. Private interests, however, are not transformed into sovereign or quasi-sovereign interests "simply by virtue of the State's aiding in their achievement." Id. A state is merely a nominal party to an action wherein it seeks to vindicate the interests of a private citizen. Id.

"Quasi-sovereign interests stand apart . . . . They are not sovereign interests, proprietary interests, or private interests pursued by [a sovereign] as a nominal party. They consist of a set of

interests that [a sovereign] has in the well-being of its populace." Id. The Miccosukee Tribe's interest in its ability to preserve its culture and way of life is a paradigmatic example of an interest that goes beyond a proprietary or private interest, and affects the general well-being of a sufficiently substantial segment of Tribe members. Accordingly, the Miccosukee Tribe's equal protection claim alleges a quasi-sovereign interest sufficient to support parens patrie standing as to its equal protection claim.[6]

C.   Sovereign Immunity

Defendants allege that the APA's sovereign immunity waiver does not apply to the Miccosukee Tribe's equal protection claim. "The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941) (citations omitted). The APA's sovereign immunity waiver, 5 U.S.C. § 702, provides:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided*, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

---

[6] Had the Miccosukee Tribe's equal protection claim been brought by an individual tribe member, it would adequately allege a concrete and particularized injury caused by Defendants water management actions, and that injury would be redressible by a favorable court decision. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

5 U.S.C. § 702. Defendants contend that Section 702 does not serve as a general waiver of sovereign immunity for suits against the United States alleging non-APA claims. Section 702 is, however, a general waiver of sovereign immunity for suits against the United States seeking nonmonetary relief, even if the claim does not arise under the APA. Panola Land Buyers Ass'n v. Shuman, 762 F.2d 1550, 1555 (11th Cir. 1985) (finding that § 702 waived sovereign immunity for APA and declaratory claim seeking nonmonetary damages, without differentiating between the two claims); Sheehan v. Army and Air Force Exchange Serv., 619 F.2d 1132, 1139 (5th Cir. 1980) (finding that § 702 wavied sovereign immunity for non-APA claim); Fla. Marin Contractors v. Williams, No. 2:03CV229-T-30SPC, 2004 WL 964216, at 3 (M.D. Fla. Apr. 22, 2004) (stating that "[t]he clear and unambiguous language of [Panola and Sheehan] is that the waiver of sovereign immunity contained in Section 702 . . . is a general waiver of sovereign immunity without limitation on whether a cause of action under the APA is also pled"); see also U.S. v. City of Detroit, 329 F.3d 515, 521 (6th Cir. 2003); Raz v. Lee, 343 F.3d 936, 938 (8th Cir. 2003); Specter v. Garrett, 995 F.2d 404, 410 (3d Cir. 1993), rev'd on other ground, 511 U.S. 462 (1994). Therefore, § 702 is a waiver of sovereign immunity as to the Miccosukee Tribe's equal protection claim.

D.   Claim Arising Directly Under the Constitution or the APA

Defendants argue that the Miccosukee Tribe's equal protection claim challenging Defendants' water management decisions must be raised under the APA rather than directly under the Constitution because Congress has allowed for judicial review under the APA. In other words, Defendants claim that because the Miccosukee Tribe could challenge the contested water management actions under the APA, their ability to raise a constitutional claim is foreclosed. This argument is supported entirely by a line of cases holding that under certain circumstances, a party's

9

ability to bring a Bivens action may be foreclosed. Memo. in Supp. of Def.s' Mot. for Reconsideration, at 10-12 (dkt # 52); Def.s' Reply in Supp. of Mot. for Reconsideration, at 6-10 (dkt # 72).

In Bivens, the Supreme Court held that individuals may bring a claim for money damages against federal officers who have violated their Fourth Amendment rights, even though no federal statute expressly authorized such relief. Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 397 (1971). Bivens actions were later allowed for the violation of other constitutional rights. Miller v. U.S. Dep't of Agric. Farm Servs. Agency, 143 F.3d 1413, 1415 (11th Cir. 1998). The ability to bring a Bivens action, however, is precluded when (1) there are "'special factors counseling hesitation in the absence of affirmative action by Congress,'" and (2) "when Congress has provided an alternative remedy which it explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective." Carlson v. Green, 446 U.S. 14, 18-19 (1980) (quoting Bivens, 403 U.S. at 396) (emphasis in original). While these considerations serve as limitations on bringing a Bivens claim, Defendants argue that these cases stand for the much broader proposition that whenever any party has a statutory remedy, no constitutional claim may be raised. While Defendants raise this argument in the context of limiting non-takings claims raised under the Fifth Amendment when a cause of action is available under the APA, they offer no limiting principle and have offered no support for their contention, aside from the Bivens line of cases.

It is nevertheless possible to raise an equal protection claim independent of an APA claim. For example, in Nat'l Parks Conservation Ass'n v. Norton, 234 F.3d 1229 (11th Cir. 2003), the National Parks Conservation Association ("NPCA") challenged the National Parks Service's

("NPS") failure to discontinue the exclusive use by individual lessees of buildings in an area known as "Stiltsville," a group of stilted buildings located in Biscayne Bay off the coast of Key Biscayne, Florida. The NPCA challenged the NPS's action under the APA and also raised a Fifth Amendment equal protection claim.[7] After concluding that NPS's challenged conduct was not final agency action within the meaning of the APA, the Court stated: "Notably, however, this does not dispose of appellants' equal protection claim; because this claim is brought directly under the Due Process Clause of the Fifth Amendment and not under the APA, the 'final agency action' requirement is inapplicable to it." Id. at 1240-41 (internal citation omitted). It is thus evident that a party may bring separate equal protection and APA claims challenging the same agency action, and that the equal protection claim need not meet the final agency action requirement. Accordingly, Defendants' contention that the Miccosukee Tribe's equal protection claim must be raised under the APA is without merit.

## IV. CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Defendants' Motions for Reconsideration (dkt # 51) and Judgment on the Pleadings (dkt # 72) are DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this 7th day of January, 2010.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc: All counsel of record

---

[7] The Fourteenth Amendment's Equal Protection Clause has been "reverse-incorporated" into the Fifth Amendment's Due Process Clause. National Parks Conservation Ass'n, 324 F.3d at 1241 n.4 (citing Bolling v. Sharp, 347 U.S. 497 499-500 (1954)).